**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

_____

IN RE:
WILLIAM M. DANIELS
        DEBTOR.

_____

 WARREN E. AGIN,
CHAPTER 7 TRUSTEE,
        PLAINTIFF,

v.

WILLIAM M. DANIELS,
        DEFENDANT.

_____

Chapter 7
Case No. 07-14988-WCH

Adversary Proceeding
No. 09-01276

**MEMORANDUM OF DECISION**

**I. <u>INTRODUCTION</u>**

The matters before the Court are the Motion for Summary Judgment filed by the plaintiff

Warren E. Agin (the "Trustee"), Chapter 7 Trustee of the estate of William M. Daniels (the

"Debtor"), the Opposition to the Motion for Summary Judgment and Cross Motion for Summary

Judgment (the "Opposition and Cross Motion") filed by the Debtor, and the Trustee's Motion to

Strike the Cross Motion for Summary Judgment (the "Motion to Strike") filed by the Trustee.

This proceeding arises from a dispute over retirement funds held by the Debtor in the form of a

profit sharing plan, the "William M. Daniels Profit Sharing Plan" (the "Profit Sharing Plan"),

and two Individual Retirement Accounts (the "IRAs"). The Debtor argues that the funds in both

the Profit Sharing Plan and the IRAs may be exempted from the bankruptcy estate pursuant to 11

U.S.C. § 522(b)(4), while the Trustee argues that the Debtor is not entitled to an exemption because he has not operated the Profit Sharing Plan in substantial compliance with applicable tax law, the IRAs were funded from non-exempt monies transferred from the Profit Sharing Plan, and the Debtor failed to disclose existence of the IRAs. The Debtor counters that he has operated the Profit Sharing plan in substantial compliance with relevant tax regulations, that the IRAs may be exempted because they were funded with exempt monies rolled over from the Profit Sharing Plan, and that failure to disclose existence of the IRAs was immaterial. For the reasons set forth below, I will grant the Trustee's Motion for Summary Judgment and deny both the Motion to Strike and the Debtor's Cross-Motion for Summary Judgment.

## II. <u>PROCEDURAL MATTERS</u>

### A. <u>Rule 56.1</u>

Pursuant to Local Rule 56.1 ("Local Rule 56.1") of the United States District Court for the District of Massachusetts, adopted and made applicable to proceedings in the Bankruptcy Court by Massachusetts Local Bankruptcy Rule ("MLBR") 7056-1, motions for summary judgment must include "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions, and other documentation."[1] Failure to include such a statement constitutes grounds for denial of the motion.[2] Oppositions to summary judgment must similarly be accompanied by a statement of material facts to which the opposing party contends that there exists a genuine issue to be tried, with supporting references to the record.[3] All referenced documents must be filed as

---

[1] LR, D. Mass 56.1, adopted and made applicable to proceedings in the Bankruptcy Court by MLBR 7056-1.

[2] *Id.*

[3] *Id.*

exhibits to the motion or opposition.[4] Material facts set forth in the moving party's statement are deemed admitted for purposes of summary judgment if not controverted by an opposing statement.[5]

The Trustee submitted a statement pursuant to Local Rule 56.1, the Statement of Material Undisputed Facts (the "Trustee's Statement"), on March 8, 2011.[6] The Debtor filed two documents in response, the Statement Opposing the Trustee's Statement of Facts, filed on April 4, 2011, and the Statement of Undisputed Facts, filed on April 4, 2011.[7] Both the Statement Opposing the Trustee's Statement of Facts and the Statement of Undisputed Facts are largely unresponsive to the Trustee's Statement. As such, material facts set forth in the Trustee's Statement that are not controverted by either of the Debtor's opposing statements are deemed admitted for purposes of summary judgment pursuant to Local Rule 56.1.

B. The Trustee's Motion to Strike

The Trustee moves to strike the Opposition and Cross Motion on the grounds that the motion is untimely. While the motion was filed after the deadline for the filing summary judgment motions, I find that the Debtor's position lacks merit and he is not entitled to summary judgment. Therefore, allowing the late filing of the Opposition and Cross Motion has no effect on the outcome of the Motion for Summary Judgment and there is little benefit to be gained from striking the Debtor's motion. As such, I will enter an order denying the Trustee's Motion to Strike.

---

[4] *Id.*

[5] *Id.*

[6] Statement of Material Undisputed Facts, Docket No. 94.

[7] Statement Opposing Trustee's Statement of Facts, Docket No. 108; Debtor's Statement of Undisputed Facts, Docket No. 109.

## III. <u>BACKGROUND</u>[8]

The Debtor is an independent broker of commercial fishing boats with no employees.[9] He established the Profit Sharing Plan in or about 1988.[10] In addition to being the sole participant of the Profit Sharing Plan, the Debtor appointed himself Trustee, Administrator, and Employer of the Profit Sharing Plan.[11] He manages the Profit Sharing Plan's "brokerage" account, writes checks from the account, and deposits checks into the account.[12] The Profit Sharing Plan was tailored from a "prototype" plan offered by Massachusetts Mutual Life Insurance Company ("MassMutual").[13] At various intervals, the Debtor received "favorable determination letters" from MassMutual via the Internal Revenue Service (the "IRS") regarding the prototype plan. These letters state that the "form of the plan . . . is acceptable under section 401 of the Internal Revenue Code[14] for use by employers for the benefit of their employees."[15] The letters go on to state the following regarding the opinion of the IRS:

> [The IRS] opinion is not a ruling or determination as to whether an employer's plan qualifies under [Internal Revenue Code] section 401(a). An employer who adopts this plan will be considered to have a plan qualified under Code section 401(a) provided all the terms of the plan are followed and the eligibility

---

[8] I take judicial notice of the docket in the present case, as well as those of related cases before this Court. See *Rodi v. Southern New England School of Law*, 389 F.3d 5, 17-19 (1st Cir. 2004) (citations omitted).

[9] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 3.

[10] *Id*. at ¶ 1.

[11] *Id.*

[12] *Id*. at ¶ 9.

[13] *Id*. at ¶ 1.

[14] 26 U.S.C. §§ 1, et seq.

[15] Carey Aff., Docket No. 90, Exhibit B.

requirements and contribution or benefit provisions are not more favorable for officers, owners, or highly compensation employees than for other employees.[16]

Related correspondence from MassMutual to the Debtor indicate that in making the IRS favorable determination letters for the prototype plan available, "MassMutual does not make any representations, either express or implied, that its provisions will necessarily fulfill any of the requirements of any particular employer," and that "[a]ny pension plan and its related documents involve significant financial, legal and tax consideration for which neither [MassMutual" nor any of its representatives can assume responsibility."[17] According to an affidavit of MassMutual Assistant Vice President Dean Carey, MassMutual "did not and does not serve as a 'manager' for the [Profit Sharing Plan] and 'did not approve any transactions relating to the [Profit Sharing Plan] . . . any transactions concerning the [Profit Sharing Plan] were directed by individuals other than MassMutual."[18]

Over the life of the Profit Sharing Plan, the Debtor, in his own capacity or as Trustee, Administrator and/or Employer, engaged in a number of business transactions with various members of his family and business associates. Many of these transactions were accomplished through the Walker Realty Trust (the "Realty Trust"), a trust established by the Debtor in 1986 through which he bought, developed, leased and sold several real estate properties on Cape Cod, Massachusetts.[19] The Debtor disputes the Trustee's characterization of the Realty Trust as a "true trust" and contends that the Realty Trust is a "Massachusetts Nominee Trust which is a 'title

---

[16] *Id.*

[17] *Id.* at Exhibit A.

[18] Carey Aff., Docket No. 90, at ¶ 10, 24.

[19] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 6.

holding device.'"[20] Pursuant to a Declaration of Trust for the Realty Trust dated January 15, 1986, the Debtor was named the sole trustee and the Debtor's Wife, Olivia Daniels, was named the sole holder of the entire beneficial interest in the Realty Trust.[21] In or about December of 1988, the Debtor's wife assigned or otherwise transferred her beneficial interest in the Realty Trust to the Profit-Sharing Plan.[22] The Debtor deposited the rent and sales proceeds from properties held by the Realty Trust directly into the Profit Sharing Plan's "brokerage" account and used funds from the Profit Sharing Plan's account to pay real estate taxes and other costs associated with managing properties held by the Realty Trust.[23] The Debtor also borrowed money from a different trust belonging to his wife, the BD Realty Trust, to pay for property purchased by the Realty Trust.[24]

Over the course of approximately ten years, the Debtor's son and daughter-in-law paid rent to the Debtor as "Trustee" for the rental of real property owned by the Realty Trust.[25] The Debtor deposited these rent checks directly into the Profit Sharing Plan's account.[26] The Debtor testified in a deposition that some or all of these rent payments were in connection with a "lease and sale agreement" with the Debtor's son whereby the son rented real property from the Realty

---

[20] Statement Opposing Trustee's Statement of Facts, Docket No. 108 at ¶ 4.

[21] *Id.* at ¶ 4.

[22] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 5; Statement Opposing Trustee's Statement of Facts, Docket No. 108 at ¶ 5.

[23] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 7.

[24] *Id.* at ¶ 17.

[25] *Id.* at ¶ 10; Loughnane Supp. Aff., Docket No. 93, Exhibit E at 80-81.

[26] *Id.*

Trust with an "option to purchase."[27] After approximately ten years of payments, a certain amount of the lease payments were credited toward the purchase price of the property.[28] This transaction also involved a "gift of equity" from the Debtor to his son.[29]

Beginning in 2008, the Internal Revenue Service (the "IRS") performed a review of a 2006 transaction whereby the Profit Sharing Plan made a "loan" to the Debtor's son.[30] At the conclusion of its review, the IRS sent the following correspondence, dated February 19, 2009 (the "February 19, 2009 IRS letter"), to the Debtor:

> "Dear Mr. Daniels: We have completed our examination of your return(s) for the above year(s) and have accepted the return(s) as filed. However, during the examination we noted certain items indicated on the enclosure, which require your attention."[31]

The "certain items" noted in the letter refers to the 2006 loan made by the Profit Sharing Plan to the Debtor's son.[32] An "Explanation of Items" that accompanied the February 19, 2009 IRS letter states the following with respect to the loan:

> "Prohibited transactions occurred when plan loan [sic] was issued to Troy E. Daniels, who is the son of the 100% owner William M. Daniels. Per the family attribution rules Troy E. Daniels is considered a disqualified person. Loan was corrected by the full amount being repaid. The 4975(a) tax calculated was deminimus [sic] and Form 5330 was not pursued."[33]

---

[27] Loughnane Supp. Aff., Docket No. 93, Exhibit E at 80-81.

[28] *Id.* at 80-81; Statement of Material Undisputed Facts, Docket No. 94 at ¶ 10.

[29] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 10.

[30] *Id.* at ¶ 12; Debtor's Statement of Material Facts Not in Dispute, Docket No. 109 at ¶ 6.

[31] Loughnane Aff., Docket No. 93, Exhibit F.

[32] *Id.*

[33] *Id.*

The Debtor also made payments from the Profit Sharing Plan's account to one Tom Florence ("Mr. Florence") for services that he provided with respect to at least one of the properties held by the Realty Trust. The Debtor identified Mr. Florence as a person who managed property owned by the Realty Trust in Dennis, Massachusetts, "made arrangements to clean up" another property held by the Realty Trust in Harwich, Massachusetts, and "put together the deal on the land in Brewster," a reference to property held by the Realty Trust in Brewster, Massachusetts.[34] Mr. Florence also located properties for the Realty Trust to buy or sell.[35] The Debtor has also described Mr. Florence as a "long time acquaintance and business associate" of the Debtor who has participated in other business ventures with the Debtor, including an entity called "Inventors Co-op."[36] The Debtor served as the Trustee of a trust that benefitted Mr. Florence's children and the Realty Trust also sold property to Mr. Florence's daughter and issued her a loan out of the Realty Trust's accounts in connection with the property.[37] Prior to the sale, money from the Profit Sharing Plan's account was transferred to the Realty Trust account to pay legal fees involved with the property.[38]

In or about 1996, the Debtor engaged the Profit Sharing Plan in a business venture, B.I.T.C.O., an enterprise to salvage a shipwreck in the Bahamas.[39] The Debtor invested both Profit Sharing Plan funds and his personal funds in the business venture.[40] The Debtor also

---

[34] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 13.

[35] *Id.*

[36] *Id.* at ¶ 14.

[37] *Id.* at ¶ 14-15.

[38] *Id.*

[39] *Id.* at ¶ 16.

[40] *Id.*

"made arrangements," discussed "business operations" with other participants, and provided money and equipment in connection with the venture.[41]

In 1996, the Debtor deposited a sum of money originating from the estate of his recently deceased uncle, Maurice H. Lopes ("Lopes"), into the Profit Sharing Plan.[42] The Debtor contends that "he believed the money to be his."[43] On or about February 11, 1998, Germania M. Jensen (the "Executrix"), as executrix of Lopes' estate, filed suit against the Debtor and his wife in the Probate and Family Court for Barnstable County.[44] The Executrix alleged, *inter alia*, that the Debtor had wrongfully taken funds from his uncle's bank accounts in the days following Lopes' death and used said monies to fund the Debtor's personal needs, such as paying down the Debtor's mortgage loan, augmenting the Profit Sharing Plan, and buying a new car.[45] On July 8, 1999, the Probate and Family Court entered a judgment in the amount of $238,538.16 in favor of the Executrix and against the Debtor and his wife.[46] In 2003, the Massachusetts Appeals Court affirmed the judgment against the Debtor, but reversed it with respect to his wife.[47]

In or about February of 2007, approximately six months prior to filing for bankruptcy protection, the Debtor transferred funds from the Profit Sharing Plan into two IRAs individually

---

[41] *Id.*

[42] *Id.* at ¶ 19.

[43] Statement Opposing Trustee's Statement of Facts, Docket No. 108 at ¶ 19.

[44] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 27.

[45] *Id.*

[46] *Id.* at ¶ 27.

[47] *Id.* at ¶ 27; *See Jenson v. Daniels*, 57 Mass. App. Ct. 811 (2003).

held by the Debtor.[48] The IRAs were funded with $272,000 and $197,894, respectively, comprised exclusively of funds rolled over from the Profit Sharing Plan.[49] No contributions from the Debtor's earnings or other funds were added to the accounts, other than interest earned on the initial rollover amount.[50]

On August 8, 2007, the Debtor filed a petition for bankruptcy under Chapter 13. The Debtor's schedules of assets and liabilities and statement of financial affairs, filed on September 10, 2007, list total assets with a value of $1,280,314.00 and claimed exemptions totaling $1,254,232.00.[51] Among the exemptions claimed on the Debtor's Schedule C – Property Claimed as Exempt ("Schedule C"), is an exemption in the Debtor's retirement account, described as "Debtor's 401-qualified pension: 'William Daniels Profit-Sharing Plan' (tax ID # XX-XXX2459/formed 8/15/88; approved by IRS 08/07/01), held by Walker Realty Trust, Wm M. Daniels, Trustee: inventory and valuations separately documented."[52] The Schedule C lists $748,179.00 as both the current value of the property without deducting the exemption and as the value of the exemption claimed.[53] The Debtor identified 29 U.S.C. § 1056(d) as the law providing the exemption.[54] The Debtor's schedules do not disclose any retirement assets other

---

[48] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 41.

[49] *Id*. at ¶ 42.

[50] *Id.*

[51] Schedules Summ. of Schedules, Statistical Summ. of Certain Liabilities, Schedule A-J, Statement of Attorney Compensation, Form B22C, Docket No. 15, Case No. 07-14988-WCH.

[52] Schedule C, Docket No. 15, Case No. 07-14988-WCH.

[53] *Id.*

[54] *Id.*

than the funds held in the Profit Sharing Plan, and the IRAs were not listed on Schedule C or otherwise disclosed in any of the Debtor's schedules.

On October 22, 2007, the Debtor filed a motion to convert his case from one under Chapter 13 to one under Chapter 11.[55] I granted this motion on November 1, 2007.[56] On March 2, 2009, the Debtor filed a motion to convert the case to one under Chapter 7.[57] I granted this motion on March 3, 2009.[58] Throughout the pendency of the case, Debtor testified at three meetings of creditors held pursuant to 11 U.S.C. § 341 where he confirmed the truth and accuracy of his schedules at the time filed and the time of such meetings.[59] The Debtor made only one reference to the IRAs at these meetings. At the first meeting held on September 25, 2007, in response to the question, "So you're the trustee . . . and the only beneficiary in this profit sharing plan," the Debtor responded "[y]es ma'am, which is an IRA, qualified ERISA."[60] The Debtor did not otherwise disclose existence of the IRAs or the February 2007 transfer of funds from the Profit Sharing Plan to the IRAs.

The Trustee initiated this adversary proceeding (the "Adversary Proceeding") on August 31, 2009 seeking turnover of the Debtor's interest in the Profit Sharing Plan and "an order enjoining [the Debtor] from reducing his interest in the [Profit Sharing Plan] by withdrawing, using or otherwise dissipating any funds or otherwise selling, liquidating or dissipating any

---

[55] Mot. to Convert Case From Chapter 13 to Chapter 11, Docket No. 27, Case No. 07-14988-WCH.

[56] Docket No. 32, Case No. 07-14988-WCH.

[57] Mot. to Convert Case to Chapter 7, Docket No. 78, Case No. 07-14988-WCH.

[58] Docket No. 79, Case No. 07-14988-WCH.

[59] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 32.

[60] Debtor's Statement of Material Facts, Docket No. 109 at ¶ 33.

property or interests in property held in the [Profit Sharing Plan]."[61] Concurrently, the Trustee filed a Motion for Preliminary Injunction seeking injunctive relief as described in the Amended Complaint.[62] There being no response from the Debtor to the Trustee's motion, I entered the injunction on September 9, 2009.[63]

On March 15, 2010, the Debtor filed the Expedited Motion for Partial Relief.[64] In the motion, the Debtor asserted that, having "decided to retire," he "must begin to de-construct the [Profit Sharing] Plan elements."[65] As such, the Debtor's motion sought authority for either liquidation or "re-allocation" by which "the 'Profit-Sharing' component [would be] reduced in favor of a traditional IRA, whose proceeds would likewise be escrowed pending the outcome of [the Adversary Proceeding]."[66] The Debtor's motion did not disclose that the Debtor had, in fact, already transferred $291,894 from the Profit Sharing Plan into the two IRAs approximately six months prior to filing his bankruptcy petition. The Debtor's counsel also did not disclose this information to me at a March 15, 2010 hearing on the matter. Nonetheless, I denied this motion on March 15, 2010.[67]

On the same day, in the course of discovery in the Adversary Proceeding, the Debtor's counsel provided the Trustee with a set of documents, including six pages relating to account

---

[61] Amended Complaint, Docket No. 4 at 1.

[62] Mot. for Prelim. Inj., Docket No. 2.

[63] Docket No. 11.

[64] Expedited Mot. for Partial Relief, Docket No. 39.

[65] *Id*. at 1-2.

[66] *Id*. at 3.

[67] Docket No. 45.

statements for the IRAs and Form 5498 tax statements for the IRAs mixed in with other discovery-related documents.[68] The Trustee has provided documentation of an e-mail he sent to the Debtor's counsel on March 23, 2010 that documents a conversation between the Trustee and the Debtor's counsel wherein Debtor's counsel indicated that the Debtor was "working to provide information to . . . explain the approximately $200,000 reduction in the value of [Profit Sharing Plan] assets as shown on Line 11a of the 2008 Form 5500."[69] On or about April 12, 2010, the Debtor's counsel provided the Trustee's counsel unsigned answers to interrogatories, one of which referred to one of the IRAs.[70] A day later, the Debtor's counsel represented in faxed correspondence that he was correcting errors in the answers to interrogatories and, purporting to strike the reference to the IRA account, stated that "[t]his is an IRA account and not a part of the Debtor's Profit Sharing Plan."[71]

Following discovery of the IRAs, the Trustee filed a new motion for preliminary injunction and turnover, the Motion for Preliminary Injunction and Turnover of Undisclosed Assets, seeking turnover of the funds in the previously undisclosed IRAs and an order "[e]njoining Debtor from reducing his interest in the [IRAs] or other individually held accounts that [the] Debtor has not disclosed or scheduled to the Court, by withdrawing, using, transferring or otherwise dissipating any of the funds in these accounts."[72] The Trustee also filed an

---

[68] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 37; Debtor's Statement of Undisputed Facts, Docket No. 109 at ¶ 37.

[69] Statement of Material Undisputed Facts, Docket No. 94 at ¶ 38; Loughnane Aff., Docket No. 93, Exhibit H.

[70] *Id.* at ¶ 39.

[71] *Id.*

[72] Mot. for Prelim. Inj. and Turnover of Undisclosed Assets, Docket No. 125, Case No. 07-14988-WCH.

expedited motion for an examination of the Debtor pursuant to Federal Rule of Bankruptcy

Procedure 2004.[73] I granted the Motion for 2004 Examination on April 20, 2011.[74] After a

hearing on the matter, I denied the Motion for Preliminary Injunction and Turnover of

Undisclosed Assets without prejudice on June 11, 2010.[75] After further discovery, the Trustee

filed the Motion for Summary Judgment on March 8, 2011.[76] The Debtor filed his Opposition to

the Motion for Summary Judgment and Cross Motion for Summary Judgment on April 4, 2011.[77]

The Motion to Strike followed on April 7, 2001. After a hearing on April 8, 2010, I took the

matters under advisement.

## VI. POSITIONS OF THE PARTIES

### The Debtor

The Debtor's Schedule C lists 29 U.S.C. § 1056(d) as the law providing exemption of the

Profit Sharing Plan.[78] The Debtor has since abandoned reliance on this statute and now contends

that the funds in both the Profit Sharing Plan and the IRAs may be exempted from the

bankruptcy estate pursuant to 11 U.S.C. § 522(b)(4).[79] He argues that the funds held in the Profit

---

[73] Expedited Mot. for 2004 Examination of William M. Daniels, Docket No. 132, Case No. 07-14988-WCH.

[74] Docket No. 133, Case No. 07-14988-WCH.

[75] Docket No. 144, Case No. 07-14988-WCH.

[76] Mot. for Summ. J., Docket No. 89.

[77] Opp'n to the Mot. for Summ. J. and Cross Mot. for Summ. J., Docket No. 107.

[78] Schedule C, Docket No. 15, Case No. 07-14988-WCH.

[79] Mem. in Opp'n to the Mot. for Summ. J., Docket No. 110 at 6-10, 16-17. The statute that Debtor cited on Schedule C, 29 U.S.C. § 1056(d), the anti-alienation provision of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§, 1001 *et seq*. While it is without question that ERISA qualified plans are excluded from the bankruptcy estate, 29 U.S.C. § 1056(d) does not reference the Bankruptcy Code or otherwise provide the basis for a valid

Sharing Plan, and, in turn, those transferred to the IRAs, received a "favorable determination" as described in 11 U.S.C. § 522(b)(4)(A) via either the favorable determination letters regarding the MassMutual prototype plan or the February 19, 2009 IRS letter.[80] Alternatively, the Debtor asserts that the Profit Sharing Plan has at all times been in "substantial compliance" with the Internal Revenue Code and are therefore exempt from the bankruptcy estate pursuant to 11 U.S.C. § 522(b)(4)(B).[81] Finally, the Debtor argues that the funds in the IRAs are entitled to exemption because they were funded with exempt monies rolled over from the Profit Sharing Plan and the failure to disclose existence of the IRAs was immaterial.[82]

<u>The Trustee</u>

The Trustee argues that because the Profit Sharing Plan has not received a "favorable determination" under 11 U.S.C. § 522(b)(4)(A) and the Debtor has not operated the Profit Sharing Plan in substantial compliance pursuant to 11 U.S.C. § 522(b)(4)(B), the funds held therein are not exempt from the bankruptcy estate.[83] Relying on *In re Wood*, the Trustee further contends that the Debtor violated an absolute duty to disclose the existence of the IRAs and is therefore barred from claiming the property as exempt.[84] Finally, he argues that even if the

---

exemption for retirement assets. 11 U.S.C. § 541(b)(7)(A); 29 U.S.C. § 1056(d). Significantly, 29 C.F.R. § 25.10.3-3(b) excludes from ERISA "any plan, fund or program . . . under which no employees are participants covered under the plan" such as a plan "under which only partners or a sole proprietor are participants under the plan." 29 C.F.R. § 25.10.3-3(b). Because the Debtor is a sole proprietor, has no employees, and is the only participant in the plan, the plan is not ERISA qualified and the Debtor has not claimed a valid exemption for the Profit Sharing Plan.

[80] *Id.* at 10, 14.

[81] *Id.* at 10-11.

[82] *Id.* at 17-19.

[83] Mem. in Supp. of Mot. for Summ. J., Docket No. 89.at 14-16.

[84] *Id.* at 28; *Wood v. Premier Capital, Inc. (In re Wood)*, 291 B.R. 219 (B.A.P. 1st Cir. 2003).

Debtor had properly disclosed existence of the IRAs, they would not be exempt because they were funded from the non-exempt Profit Sharing Plan.[85]

## V. DISCUSSION

### A. The Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[86] "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[87] Material facts are those having the potential to affect the outcome of the suit under the applicable law.[88]

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[89]

---

[85] Mem. in Supp. of Mot. for Summ. J., Docket No. 89 at 31-32.

[86] Fed. R. Civ. P. 56(a) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[87] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d. 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[88] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[89] Fed. R. Civ. P. 56(c)(1).

A genuine issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[90] The Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[91]

B. The Profit Sharing Plan

Commencement of a case under the Bankruptcy Code[92] creates an estate comprised of all property of the debtor wherever located and by whomever held.[93] Section 522(b)(1) permits an individual debtor to exempt certain property from the bankruptcy estate.[94] Such property includes "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."[95] Under 11 U.S.C. § 522(b)(4)(A), retirement funds are presumed exempt if under 11 U.S.C. § 522(b)(3)(C) they are "held in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986 and the determination is in effect as of the date of the filing of the petition."[96] The Debtor argues that the Profit Sharing Plan received "favorable determination" as described in 11 U.S.C. § 522(b)(4)(A) via either the favorable determination letters regarding the MassMutual prototype plan[97] or the February 19,

---

[90] *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990)(*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[91] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[92] 11 U.S.C. §§ 101 *et seq.*

[93] 11 U.S.C. § 541(a).

[94] 11 U.S.C. § 522(b)(1).

[95] 11 U.S.C. § 522(b)(3)(C).

[96] 11 U.S.C. § 522(b)(4)(A).

[97] Mem. in Opp'n to the Mot. for Summ. J., Docket No. 110 at 14.

17

2009 IRS letter.[98] According to IRS Publication 794, titled "Favorable Determination Letter," a favorable determination letter "indicates that, in the opinion of the IRS, the terms of the plan conform to the requirements of [Internal Revenue Code] section 401(a). A favorable determination letter expresses the IRS's opinion regarding the form of the plan document."[99] An employee's trust is entitled under to 26 C.F.R. § 1.401-1(e) to request a determination letter from the IRS as to its tax exempt status."[100] While the MassMutual prototype plan has received a favorable determination letter, it explicitly states that it is applicable only to the "*form* of the plan . . . [and] . . . is not a ruling or determination as to whether an employer's plan qualifies under [Internal Revenue] Code section 401(a) . . . An employer who adopts this plan will be considered to have a plan qualified under [Internal Revenue] Code section 401(a) *provided all the terms of the plan are followed . . .*"[101] Therefore, this letter is insufficient to establish that the funds in the Profit Sharing Plan are presumed exempt pursuant to 11 U.S.C. § 522(b)(4)(A).

With respect to the February 19, 2009 IRS letter, the Debtor argues that "[i]t is undisputed that the Service examined the [Profit Sharing Plan] and issued a letter stating that its compliance with the law on February 29, 2009."[102] Neither the 2009 letter nor the accompanying "Explanation of Items," however, indicate that the IRS made a determination that the Profit Sharing Plan was a qualifying plan under one of the sections of the Internal Revenue Code listed under 11 U.S.C. § 522(b)(1). Instead, these documents reference only one year's tax return and

---

[98] *Id*. at 10; Loughnane Aff., Docket No. 93, Exhibit F.

[99] IRS Publication 794 (Rev. October 2010), Catalog Number 20630M, available at http://www.irs.gov/irs-pdf/p794.pdf.

[100] 26 C.F.R. § 1.401-1(e).

[101] Carey Aff., Docket No. 90, Exhibit B (emphasis added).

[102] Mem. in Opp'n to the Mot. for Summ. J., Docket No. 110 at 7.

one specific transaction. Additionally, the Debtor has not demonstrated that he requested a determination letter pursuant to 26 C.F.R. § 1.401-1(e). Therefore, I find that the February 19,2009 IRS letter is not a favorable determination letter under section 7803 of the Internal Revenue Code.

Section 522(b)(4)(B) of the Bankruptcy Code describes the circumstances under which monies held in a retirement fund may be exempted from the estate where a favorable determination letter has not been issued. It provides, in relevant part:

> (B) If the retirement funds are in a retirement fund that has not received a favorable determination under such section 7805, those funds are exempt from the estate if the debtor demonstrates that—
>> (i) no prior determination to the contrary has been made by a court or the Internal Revenue Service; and
>> (ii)(I) the retirement fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986; or
>>> (II) the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986 and the debtor is not materially responsible for that failure.

Neither party has presented evidence that the IRS made a prior determination that the Profit Sharing Plan is not tax-exempt pursuant to section 522(b)(4)(B)(i). With respect to section 522(b)(4)(B)(ii), the Trustee points to several "prohibited transactions . . . in violation of IRS rules and regulations" as evidence that the Debtor has not performed in substantial compliance with the Internal Revenue Code.[103]

A profit sharing plan is a retirement savings vehicle designed to "enable employees or their beneficiaries to participate in the profits of the employer's trade or business."[104] Pursuant to the Internal Revenue Code, a profit sharing plan created and operated in compliance with

---

[103] Mem. in Supp. of Mot. for Summ. J., Docket No. 89 at 17.

[104] 26 C.F.R. § 1.401-1(a)(2)(ii).

applicable tax law is considered a qualified plan not subject to taxation.[105] While there are no specific limitations with respect to what *type* of investments may be made by the trustee of a tax exempt profit sharing plan, the Internal Revenue Code does set limitations on persons with whom transactions may be made.[106] Pursuant to 26 U.S.C. § 4975, certain "prohibited transactions" made by "disqualified persons" are subject to taxation. The profits from such transactions are therefore not exempt from the bankruptcy estate under 11 U.S.C. § 522(b)(3).[107] Section § 4975(e)(2) of the Internal Revenue Code defines "disqualified persons" to include, among others, fiduciaries, persons providing services to the plan, an employer whose employees are covered by the plan, officers and directors, and family members of any disqualified person.[108]

A "fiduciary" is defined as any person who:

> (A) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
> (B) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
> (C) has any discretionary authority or discretionary responsibility in the administration of such plan.[109]

Additionally, "Prohibited transactions" include the following:

> (A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
> (B) lending of money or other extension of credit between a plan and a disqualified person;

---

[105] 26 U.S.C. § 401.

[106] *See* 26 U.S.C. § 4975; 26 C.F.R. § 1.401-1(b)(5)(i).

[107] 26 U.S.C. § 4975.

[108] 26 U.S.C. § 4975(e)(2).

[109] 11 U.S.C. § 4975(e)(3).

(C) furnishing of goods, services, or facilities between a plan and a disqualified person;
(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;
(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interests or for his own account; or
(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.[110]

Under 26 U.S.C. § 4975(e)(2), members of the Debtor's family, including his son, daughter-in-law, and wife, are "disqualified persons."[111] Mr. Florence, a person who has provided services to the plan, and his daughter are also disqualified persons.[112] As such, all real estate sales and leases between the Profit Sharing Plan and the Debtor's son, daughter-in-law, and Mr. Florence's daughter were prohibited transactions. This includes the rental of property over a period of ten years to the Debtor's son and daughter-in-law, the "lease and sale" agreement with the Debtor's son, the "gift of equity" associated with the sale transaction, the "loan" to the Debtor's son as investigated by the IRS,[113] and the sale of property and loan to Mr. Florence's daughter. Similarly, the loan of money from the BD Realty Trust to the Profit Sharing Plan was also a "prohibited transaction" under the Internal Revenue Code.

---

[110] 26 U.S.C. § 4975(c).

[111] 26 U.S.C. § 4975(e)(2)(F).

[112] 26 U.S.C. § 4975(e)(2)(B), (F).

[113] I note that the February 19, 2009 IRS letter states explicitly that the IRS made a finding that this transaction was a "[p]rohibited transaction" and that the Debtor's son is a "disqualified person." This information supports my finding that the other real estate transactions between the Profit Sharing Plan and various "disqualified persons" are also "prohibited transactions." The IRS determination that the loan was "corrected by the full amount being repaid" does not indicate that the IRS found the transaction to be de minimis, as the Debtor contends, but rather that the tax owed on account of the transaction was de minimis because the loan was repaid in full. *See* Loughnane Aff., Docket No. 93, Exhibit F.

With respect to Mr. Florence, the Debtor argues that "[t]he Trustee fails to discuss [26 U.S.C.] § 4975(d)(2) which provides exemptions for services provided at fair value for services provided necessary to the operation of the plan."[114] While this provision does provide a reasonable exemption for payment on account of services rendered to the Profit Sharing Plan by Mr. Florence, it does not provide an exemption for the sale of real estate and extension of a loan to Mr. Florence's daughter, a disqualified person.

The Debtor, having actively managed and administered the Profit Sharing Plan, including its investments and finances, is a fiduciary and a disqualified person pursuant to 26 U.S.C. §§ 4975(e)(2), (3). [115] The assignment of the Debtor's wife's interest in the Realty Trust to the Profit Sharing Plan made the Debtor both the Trustee and, via the Profit Sharing Plan, the sole beneficiary of the Realty Trust. Such assignment is an abuse of the trust form and effectively merged the interests of the Profit Sharing Plan and the Realty Trust. Thus, the properties held by the Realty Trust are assets of the Profit Sharing Plan and the assignment was a prohibited transaction under 26 U.S.C. § 4975(c)(1)(E) and (F). With respect to B.I.T.C.O., the Trustee correctly notes that the Debtor, "as the fiduciary of the Profit Sharing Plan and disqualified person, thus dealt with the Profit Sharing Plan assets 'in his own interests or for his own account,' in violation of 26 U.S.C. § 4975(e), by investing Profit Sharing Plan assets in a business venture in which Debtor had also individually invested."[116]

---

[114] Mem. in Opp'n to the Mot. for Summ. J., Docket No. 110 at 15

[115] 26 U.S.C. § 4975(e)(2)(A), (C).

[116] Mem. of Trustee In Supp. of Mot. for Summ. J. on the Second Amended Complaint, Docket No. 89 at 19-20.

Finally, assignment of the Debtor's wife's beneficial interest in the Realty Trust and the deposit of funds from the Lopes estate also violate Internal Revenue Code provision 26 U.S.C. § 401(d), which reads as follows:

> (d) Contribution limit on owner-employees
> A trust forming part of a pension or profit-sharing plan which provides contributions or benefits for employees some or all of whom are owner-employees shall *constitute a qualified trust under this section only if*, in addition to meeting the requirements of subsection (a), the plan provides that contributions on behalf of any owner-employee may be made *only with respect to the earned income of such owner-employee which is derived from the trade or business with respect to which such plan is established.*[117]

The Debtor argues that his repeat violations of the tax code are "insignificant errors" or "de minimis."[118] Nonetheless, over the life of the Profit-Sharing Plan, the Debtor has routinely engaged in "prohibited transactions" under 26 U.S.C. § 4975(e). This was not an isolated transaction or mere "skiing the edges of the ski slope" as the Debtor's counsel contends.[119] Rather, the Debtor has admitted that he routinely used the funds in his retirement account to enrich the interests of his family and other disqualified persons, and it is evident from these admissions that executing taxable "prohibited transactions" was the routine manner by which he managed the assets held in his Profit Sharing Plan. Furthermore, having actively managed the affairs of the plan as employer, manager, and trustee of the Profit Sharing Plan, the Debtor was materially responsible for the failure of the plan to be in substantial compliance with applicable tax law. The Debtor has abused the profit sharing plan form and the consequence is that the funds held therein may not be exempted from the bankruptcy estate.

---

[117] 26 U.S.C. § 401(d) (emphasis added).

[118] Mem. in Opp'n to the Mot. for Summ. J., Docket No. 110 at 11, 15.

[119] Transcript of Hearing on Mot. for Summ. J., Docket No. 115 at 17.

B. <u>The IRAs</u>

Retirement funds from tax-exempt qualified employee plans retain their tax-exempt status when rolled over into a tax-exempt IRA.[120] Similarly, funds that are subject to taxation remain subject to taxation once rolled over to an IRA.[121] Therefore, the IRAs are not tax exempt because they were funded by the non-exempt Profit Sharing Plan. Even assuming, *arguendo*, that the IRAs were otherwise exempt, the Debtor would still be barred from claiming the exemption on account of his failure to disclose existence of the IRAs. The law on this issue is clear. "Debtors have an absolute duty to report whatever interests they hold in property, *even if they believe their assets are worthless or are unavailable to the bankruptcy estate*."[122] Debtors are held to this standard because "the successful functioning of the bankruptcy system hinges on both the debtor's truthfulness and [his or her] willingness to make a full disclosure."[123] Debtors "cannot turn their property exemptions into a game of hide and seek where the debtor quietly retains all property that the trustee does not find and then moves to amend the exemption schedules when the trustee becomes aware of the property."[124] In short, the bankruptcy system "simply does not abide such dishonesty, no matter how minor the Debtor would have us believe the omission was."[125] Therefore, "if a debtor intentionally conceals or fails to disclose estate

---

[120] 26 U.S.C. § 408(d)(3).

[121] *In re Swift*, 124 B.R. 475, 485 (Bankr. W.D. Tex. 1991) (citing 26 U.S.C. § 408(d)(3)(A)(ii)); *In re Banderas*, 236 B.R. 837, 840 (Bankr M.D. Fla. 1998) (citing *Batens v. Comm'r*, 777 F.2d 1160, 1167 (6th Cir. 1985)).

[122] *In re Wood*, 291 B.R. at 226 (emphasis added).

[123] *Chase v. Harris (In re Harris),* 385 B.R. 802, 805 (B.A.P. 1st Cir. 2008) (citations omitted).

[124] *In re Valentine*, Case No. 08–12074, 2009 WL 3336081 at *6 (Bankr. D. N.H. 2009).

[125] *In re Harris,* 385 B.R. at 805.

property, the debtor will be barred from claiming such property as exempt, even if the property would have been exempt had it been properly scheduled and claimed."[126] In evaluating whether a debtor should be barred from claiming property as exempt, intent to conceal and bad faith are factual determinations to be made by the court based upon the evidence presented and an examination of the relevant surrounding circumstances.[127]

Debtor's counsel characterizes the failure to disclose existence of the IRAs as a mere "mistake" arising from a "misunderstanding" of what kind of funds were held.[128] Nevertheless, the Debtor is a sophisticated businessman who has managed the affairs of the Profit Sharing Plan for over twenty years and personally arranged the transfer of funds to the IRAs prior to filing his bankruptcy petition. Over the three and a half years that this case has been pending before me, the Debtor failed to take advantage of numerous opportunities to disclose existence of the IRAs. The Debtor not only failed to list the IRAs on his schedules, but also failed to disclose existence of the IRAs at three meetings of creditors, an examination pursuant to Federal Rule of Bankruptcy Procedure 2004, in various pleadings and motions, and in numerous depositions, hearings, and discovery requests. Furthermore, in the Expedited Motion for Partial Relief, the Debtor moved for authority to either liquidate or "re-allocat[e]" funds from the Profit Sharing Plan into IRAs when in fact he had already done so approximately six months prior to filing his bankruptcy petition.[129] Rising above a failure to disclose, the Debtor and Debtor's counsel actively misrepresented material facts both in the Expedited Motion for Partial Relief and in a

---

[126] *In re Wood*, 291 B.R. at 226.

[127] *Id.* (*citing Matter of Yonikus*, 996 F.2d 866, 872 (7th Cir. 1993); *Keach v. Boyajian (In re Keach)*, 243 B.R. 851 (B.A.P. 1st Cir. 2000)).

[128] Mem. in Opp'n to the Mot. for Summ. J., Docket No. 110 at 19.

[129] *See infra* at 12.

hearing on the matter. These actions do not characterize a mere "mistake." Rather, they signify a pattern of bad faith concealment that spans the entire three and a half years of the Debtor's bankruptcy case. Therefore, I would alternatively find that the Debtor is barred from claiming the property as exempt and must turn over the funds currently held in the IRAs to the Trustee for administration in the bankruptcy proceeding. Because the Debtor is not entitled to claim an exemption in either the Profit Sharing Plan or the IRAs, amending his bankruptcy schedules would be of no consequence.

## VI. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order granting all counts of the Trustee's Motion for Summary Judgment, denying the Motion to Strike, and denying the Debtor's Cross-Motion for Summary Judgment.


_____
William C. Hillman
United States Bankruptcy Judge

Dated: June 16, 2011


Counsel Appearing:        John G. Loughnane, Eckhart Seamans, Boston, MA
                          for the Chapter 7 Trustee
                          Richard J. Cohen, Richard J. Cohen, Esq., P.C., Centerville, MA
                          for the Debtor
                          Timothy J. Burke, Burke & Associates, Braintree, MA
                          for the Debtor